

Signed and Filed: September 5, 2019

_____
**DENNIS MONTALI**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | ) Bankruptcy Case No. 17-30326-DM |
| MAYACAMAS HOLDINGS LLC, | ) CHAPTER 7 |
| Debtor. | ) |
| E. LYNN SCHOENMANN, Chapter 7 Trustee, | ) Adversary Case No. 19-03012-DM |
| Plaintiff, | ) |
| v. | ) |
| CARMEL FINANCING, LLC, *et al.*, | ) |
| Defendants. | ) |

<u>MEMORANDUM DECISION ON MOTION TO DISMISS CLAIMS AGAINST
DEFENDANT CARMEL FINANCING LLC</u>

On April 7, 2019, plaintiff E. Lynn Schoenmann, chapter 7 trustee ("Trustee") of the chapter 7 estate of Mayacamas Holdings LLC ("Debtor"), filed a Complaint to Determine Validity, Priority, and Extent of Liens; to Avoid Unperfected Security Interests and Fraudulent and Preferential Transfers;

-1-

and to Object to Claims Relating to Sonoma County Assessor's Parcel 120-190-033 (the "Complaint") against 23 named defendants, including defendant Carmel Financing, LLC ("Carmel"). *See* Complaint at dkt. 1. On April 22, 2019, Carmel filed a motion to dismiss ("MTD") (dkt. 5) the adversary proceeding for failure to state a claim upon which relief can be granted. Trustee filed an opposition (dkt. 10), to which Carmel replied (dkt. 12). Following a hearing on June 3, 2019, the court took the MTD under advisement. For the reasons set forth below, the court is denying the MTD in part and granting it in part.

I.  INTRODUCTION

On April 10, 2014, Debtor executed a promissory note in the principal amount of $2,000,000 to the order of Carmel (the "Note"). The Note was secured by a first priority deed of trust (the "DOT") encumbering property located in eastern Sonoma County (the "Ranch Parcel"). On April 7, 2017, Debtor filed a chapter 11 petition and listed the Ranch Parcel as its principal asset. Trustee was appointed as the chapter 11 trustee on October 4, 2017, and the case was converted to chapter 7 on December 5, 2017.

On October 8, 2017 -- four days after the appointment of Trustee -- the Tubbs Fire erupted and caused significant damage to the Ranch Parcel. To date, Trustee has received more than $2 million from Debtor's insurance carrier for claims arising out of the Tubbs Fire (the "Insurance Proceeds"). Carmel contends that under the Note and DOT, the remaining Insurance Proceeds

should be turned over to it.  Trustee commenced this adversary proceeding seeking, among other things, an adjudication that Carmel has no secured interest in the insurance policy and the Insurance Proceeds.  Trustee additionally seeks a judicial determination that certain provisions of the Note are unenforceable, including those imposing an 18% default interest rate, monthly late charges of four percent, and a $75,000 "Exit Fee."

**II. ISSUES AND CONTENTIONS**

A. <u>Who is Entitled to the Insurance Proceeds?</u>

Trustee alleges that Debtor was the only named insured on a "commercial lines policy" covering the Ranch Parcel (the "Policy").  As of April 7, 2019, Philadelphia Indemnity Insurance Company ("Insurer") had remitted to Trustee $2,114,268.76 in Insurance Proceeds for damages to the Ranch Parcel caused by Tubbs Fire.  *See* Complaint at dkt. 1, 3:11-20, ¶ 9.  Except for a court-approved expenditure of $418.541.50 for post-fire clean-up required by law, Trustee continues to hold the Insurance Proceeds, which equalled $1,695,727.26 as of the commencement of this adversary proceeding.  *Id.*

In paragraph 11 of the Complaint, Trustee asserts that the chapter 7 estate, and not Carmel, is entitled to the Insurance Proceeds.  In support of this claim, Trustee alleges that the Policy does not mention Carmel or identify it as an additional loss payee.  She also alleges that Carmel did not notify Insurer that it should be added as a loss payee on the Policy in accordance with California's law (Cal. Comm. Code § 9312(b)(4))

-3-

governing the creation and perfection of security interests in insurance policies; she further contends that Colorado law excludes insurance policies from property in which a creditor can claim a security interest. Carmel does not dispute either allegation, but instead contends that it has a security interest in the Insurance Proceeds, not the policy itself.

Exercising the strong-arm avoidance powers conferred upon her by 11 U.S.C. § 544(a)(1), Trustee seeks to avoid any security interest that Carmel may have had in the Insurance Proceeds prior to and as of the petition date. "The avoided lien may be preserved under 11 U.S.C. § 551 for the benefit of the estate, thereby providing a possibility of payment to estate's general unsecured creditors." *See* Complaint, ¶ 11, dkt. 1, p.3. *See also* id. at ¶¶ 23-26, 57, 60(a), and 62.

B. <u>Are Carmel's Claims for Default Interest and Other Charges Viable under Governing Law?</u>

The Note provides for a 6% per annum interest rate. Complaint, ¶ 21. In addition, an "Event of Default" provision allows Carmel to recover an 18% "Default Rate;" monthly late charges of 4%; and a $75,000 "Exit Fee." *Id.* Trustee contends that California law governs the enforceability of these provisions. She further alleges that the default interest and interest charges do not bear a reasonable relationship to the actual damages that the parties could have anticipated from a breach of the Note and thus are unenforceable under California law, particularly under California Civil Code section 1671 ("CC § 1671"). *Id.* at ¶ 23.

-4-

Case: 19-03012    Doc# 15    Filed: 09/05/19    Entered: 09/05/19 16:51:06    Page 4 of 12

In response, Carmel asserts that the loan documents executed by Debtor explicitly provide that Colorado law governs the matters pertaining to the Note's construction, validity and performance, and that the amounts owed by Debtor as of the petition date for default interest, late charges and the exit fee are permissible under Colorado law. MTD at dkt. 5, ECF pg. 15-17. Carmel also contends even if California law does govern the Trustee's claims, CC § 1671 is inapplicable when the loan has matured and the entire Note is due and payable.

**III. STANDARDS GOVERNING MOTIONS TO DISMISS**

To overcome a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted). In considering a Rule 12(b)(6) motion, this court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

//
//

-5-

Case: 19-03012    Doc# 15    Filed: 09/05/19    Entered: 09/05/19 16:51:06    Page 5 of 12

**IV. DISCUSSION**

   A. Does California or Colorado Law Apply?

   *1. Governing Law*

Before addressing the merits of the substantive issues raised by the MTD, the court must determine which state law applies. Bankruptcy courts apply federal common law choice-of-law rules to determine the enforceability of a contractual choice-of-law provision, even when resolution of the underlying dispute turns on state law. *Mandalay Resort Group v. Miller*, 292 B.R. 409, 413 (9th Cir. BAP 2003); *In re CMR Mortg. Fund, LLC*, 416 B.R. 720, 728-29 (Bankr. N.D. Cal. 2009).

Federal common law applies section 187 of the Restatement (Second) Conflicts of Law to determine the enforceability of contractual choice-of-law provisions. *Id.* Subdivision (1) of the Restatement (Second) of Conflicts provides:

> The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.

In other words, parties to a contract "may agree to apply the law of a forum to decide all questions regarding the construction and performance of an agreement, but not questions regarding capacity to contract, or other contract-formation issues." *CMR*, 416 B.R. at 729. Where the making of a contract is not in dispute, "the law chosen by the parties need not have any reasonable relationship to the place of creation or performance of the contract." *Id.*

//

-6-

*2. The Contractual Terms*

Paragraph 10 of the Note provides that in "matters of construction, validity and performance, this note and the obligations arising hereunder shall be governed by, and construed in accordance with, the laws of the State of Colorado . . .[.]" *See* Carmel's Request for Judicial Notice ("RJN") at dkt. 6 at ECF pgs. 7-8. In contrast, the DOT provides that "at all times the provisions for the creation, *perfection*, and enforcement of the lien and security interest created pursuant hereto and pursuant to any other document entered into between [Carmel and Debtor] shall be governed by and construed in which the property is located[.]"[1] RJN at dkt. 6, ECF pg. 18.

*3. Analysis*

Given the federal choice-of-law principles that place great weight on choice-of-law provisions executed by contracting parties with respect to the interpretation and enforcement of

---

[1] The DOT also indicates that to the extent the law of the state where the property is located permits (i.e., California), the obligor (i.e., Debtor) waives any right to contest the applicability of Colorado law as to the "construction, validity, and enforceability" of the Note and DOT. Such a waiver would not be enforceable under California law, given that California courts will not enforce express choice of law provisions where the chosen state does not have a substantial relationship to the parties or their transaction or if the chosen state's law "is contrary to a fundamental policy of California" and "California has a materially greater interest than the chosen state in the determination of the particular issue. *Rincon EV Realty LLC v. CP III Rincon Towers, Inc.*, 8 Cal. App. 5th 1, 10 (2017) (internal citations omitted).

their contracts, and given California's interest in governing security interests granted in real property and fixtures located within its borders, this court will apply California law to issues pertaining to the DOT, the Property, and the Insurance Proceeds, which Carmel contends are proceeds of the Property. Applying the same principles, the court will honor the contracting parties' agreement to apply Colorado law when interpreting, enforcing, or resolving a challenge to terms of the Note.

> B. <u>Trustee Has Not Asserted a Cognizable Claim under Colorado Law to Invalidate the Default Interest Rate and Other Charges Imposed on Debtor</u>

Trustee objects to the 18% default interest rate and the other charges imposed by the Note and DOT, alleging that they constitute impermissible and unenforceable penalties under California law. *See* Complaint at dkt. 1, ¶ 60(a). Having determined that Colorado law governs the enforceability of the default interest rate and other charges and terms of the Note, the court must decide whether these Note provisions run afoul of that governing law. For the reasons set forth below, the court concludes that default interest rate and other charges are permissible under Colorado law.

Under Colorado law, miscellaneous charges such as default charges and exit fees are permissible as long as the total amount of the interest and fees and charges to be paid is less than Colorado's usury rate of 45 percent. In *Dikeou v. Dikeou*, 928 P.2d 1286 (Co. Sup. Ct. 1996) (*en banc*), the Colorado Supreme Court held that late payment charges provided in a non-

-8-

Case: 19-03012   Doc# 15   Filed: 09/05/19   Entered: 09/05/19 16:51:06   Page 8 of 12

consumer loan agreement as a condition of credit being extended constituted "interest" within the meaning of the non-consumer usury statute as the numerical late charges were easily convertible to a percentage of the unpaid balance of the loan. *Id.* at 1293-94. In Colorado, usury occurs when the interest on a loan exceeds 45%. *West's C.R.S.A.* § 5-12-103(2).

Carmel contends that the total amount being charged under the Note (the 6% per annum interest rate, the 18% default rate, the monthly late charges of 4% and the $75,000 exit fee) result in an interest rate that is enforceable under Colorado's governing law. Assuming the factual accuracy of that representation, the court agrees that Trustee's efforts to strike those charges would not succeed under Colorado law. Consequently, the court will grant the MTD as to the First Claim for Relief.

C. <u>Carmel's Claim Is Not Secured by the Insurance Proceeds</u>

Carmel alleges that its "status as a secured creditor on the Property" means that it "holds a perfected security interest in the Insurance Proceeds since it cannot be disputed that the Insurance Proceeds are the identifiable cash proceeds of that real estate collateral." MTD at 4:25-5:1. In support of its position, Carmel notes that paragraph (f) of the DOT granted it a security interest in both real and personal property pursuant to the Uniform Commercial Code ("UCC"), including all "[i]ntangibles in which a security interest may be created under the UCC." MTD, dkt. 5 at 22-26. According to Carmel, that security interest extended to all insurance policies, insurance payments and unearned insurance premiums as well as claims,

-9-

demands, awards, settlements and other payments arising or resulting from or otherwise relating to any insurance (whether or not Carmel was named as a loss payee).

Carmel's argument overlooks several salient points. First, the UCC defines a "security interest" as "an interest *in personal property or fixtures* that secures payment or performance of an obligation." *See* Cal. Comm. Code § 1201(35) (emphasis added). Carmel has not provided any evidence that, prior to the petition date, it perfected a security interest in any personal property or fixtures of Debtor, either by filing a financing statement or taking possession of such property as required by the UCC. *See* Cal. Comm. Code § 9310(a) and (b)(6). *See also* Cal. Comm. Code § and 9315(c) (providing that a security interest in proceeds is perfected only if the security interest in the original collateral was perfected).

Second, the UCC does not govern the "creation or transfer of an interest in or lien on real property, including a lease or rents thereunder" with certain exceptions that are inapplicable here. Cal. Comm. Code § 9109(c)(11). In arguing that it is entitled to the Insurance Proceeds, Carmel notes that the multi-state UCC generally defines "proceeds" as "[w]hatever is acquired upon the sale, lease, license, exchange or other disposition of collateral." Carmel further observes that "proceeds" include "insurance payable by reason of the loss . . . or damage from the collateral," citing U.C.C. § 9102(a)(64). But real property is not "collateral" that is governed by the UCC, as indicated in Cal. Comm. Code § 9109(c)(11). *See also In re Ehrle*, 189 B.R. 771, 775 (9th Cir.

-10-

1995) ("Under California's Uniform Commercial Code, security interests in personal property extend to the cash proceeds thereof. However, [the UCC] excepts the 'transfer of an interest in or lien on real estate[,]' from coverage under California's Article 9.").

Third, Carmel did not provide written notification to Insurer that it should be added as a loss payee to the policy, even though California's version of the UCC allows a creditor to acquire a security interest in an insurance policy procured by a debtor for its own benefit if, and only if, written notification is provided to the insurer. Section 9312 of the California Commercial Code governs the perfection of security interests in insurance. In particular, section 9312(b)(4) provides that a "security interest in, <u>or claim in or under</u>, any policy of insurance, including unearned premiums, may be perfected only by giving written notice of the security interest or claim to the insurer." Cal. Comm. Code § 9312(a)(4) (emphasis added). Absent that written notice, Carmel cannot assert a security interest in the claim filed with and paid by Insurer.

Fourth and finally, California law does not permit a mortgagee who has not been named as an insured (or who has not provided written notification of its security interest in the policy) to recover insurance proceeds relating to claims of damage to the mortgaged property. *Zaghi v. State Farm Gen. Ins. Co.*, 77 F.Supp.3d 974 (N.D. Cal. 2015). As the *Zahgi* court stated:

> In California, recovery of proceeds under an insurance contract is generally limited to the named

-11-

> insureds. *Bonaparte v. Allstate Ins. Co.*, 49 F.3d 486, 488 (9th Cir. 1994); *see also Russell v. Williams*, 58 Cal.2d 487, 24 Cal.Rptr. 859, 374 P.2d 827 (1962) (per curiam). This is because "insurance does not insure the property covered thereby, but is a personal contract indemnifying the insured against loss resulting from the destruction of or damage to his interest in that property." *Russell*, 58 Cal.2d at 490, 24 Cal.Rptr. 859, 374 P.2d 827.

*Id.* at 977.

**V. CONCLUSION**

For the reasons stated above, the court will GRANT Carmel's MTD as to Trustee's claims relating to the enforceability of the 18% default interest rate, the monthly late charges of 4%, and the $75,000 "Exit Fee." It will DENY Carmel's MTD as to Trustee's claims relating to the Insurance Proceeds. Counsel for Carmel should prepare and upload an order granting the MTD in part and denying it in part, for "the reasons set forth in the court's memorandum decision filed on September -, 2019, at dkt. -." The order should also reflect that the next A.P. scheduling conference will occur on October 25, 2019, at 1:30 p.m. Counsel for Carmel must comply with B.L.R. 9021-1(c) before uploading the order.

*** END OF MEMORANDUM DECISION ***