MANATT, PHELPS & PHILLIPS, LLP
CARL L. GRUMER (Bar No. CA 066045)
E-mail: cgrumer@manatt.com
11355 West Olympic Boulevard
Los Angeles, CA 90064-1614
Telephone: (310) 312-4000
Facsimile: (310) 312-4224

Attorneys for Defendant
Carmel Financing, LLC

UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MAYACAMAS HOLDINGS LLC,<br><br>Debtor. | Case No. 17-30326 DM<br><br>Chapter 7<br><br>ADVERSARY PROCEEDING NO. 19-03012 DM<br><br>**MOTION FOR LEAVE TO APPEAL INTERLOCUTORY ORDER** |
| E. Lynn Schoenmann, Chapter 7 Trustee,<br><br>Plaintiff,<br><br>vs<br><br>Carmel Financing, LLC, et al.<br><br>Defendants | |

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

325263217.1

MOTION FOR LEAVE TO APPEAL
INTERLOCUTORY ORDER

Case 19-03012    Doc# 18    Filed: 09/30/19    Entered: 09/30/19 16:05:14    Page 1 of 30

# TABLE OF CONTENTS

|  |  |  | Page |
|---|---|---|---|
| I. | STATEMENT OF FACTS | | 1 |
| II. | QUESTIONS PRESENTED | | 3 |
| III. | WHY THIS APPEAL SHOULD BE HEARD | | 4 |
| | A. | The Perfection Issue | 4 |
| | B. | The Bankruptcy Freeze | 6 |
| | C. | Significance of This Appeal | 8 |
| CONCLUSION | | | 9 |

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

325263217.1

i

MOTION FOR LEAVE TO APPEAL
INTERLOCUTORY ORDER

# TABLE OF AUTHORITIES

Page

## CASES

*Aitchison v. Bank of America,*
8 Cal.2d 400 (1937) ...................................................................................5

*In re Arithson,*
175 B.R. 313 (Bkrtcy., D.N.D. 1994).............................................................7

*In re Colony Beach and Tennis Club, Inc.*
508 B.R. 468 (Bkrtcy, M.D. Florida 2014) .....................................................7

*In Re Ehrle,*
189 B.R. 771 (9th Cir. 1995) .......................................................................5

*In re Highland Construction Management Services,*
497 B.R. 829 (Bkrtcy, E.D. Virginia 2013), *affirmed,* 583 Fed. App'x
217 (4th Cir. 2014) .....................................................................................7

*In re Miller Brothers Lumber Company,*
2013 U.S. Dist. Lexis 152176 (U.S.D.C., M.D. N.C. 2013) .............................7

*In re Neuenschwander,*
73 B.R. 327 (Bkrtcy., S.D. Florida 1987).......................................................8

*In re Raiton*
139 B.R. 931 (9th Cir. BAP 1992) .............................................................6, 7

*In re Roderick Timber Co.,*
185 B.R. 601 (9th Cir.BAP 1995) .................................................................4

*In re Stetson Associates, Inc.*
330 B.R. 613 (Bkrtcy., E.D. Tennessee 2005) ...............................................7

*In re Travers,*
202 B.R. 624 (9th Cir. BAP 1996) ................................................................4

*In re Wind Power Systems, Inc.,*
841 F.2d 288 (9th Cir. 1988) ....................................................................6, 7

*Toranto v. Dzikowski,*
380 B.R. 96 (U.S.D.C., S.D. Florida 2007)....................................................7

*Zaghi v. State Farm General Insurance Company,*
77 F.Supp.3d 974 (N. D. Cal 2015)............................................................5, 6

## STATUTES

11 U.S.C.A. § 544(a)...........................................................................2, 6, 7, 8

11 U.S.C.A. § 544(a)(1)................................................................................7

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

325263217.1

ii

MOTION FOR LEAVE TO APPEAL
INTERLOCUTORY ORDER

Case: 19-03012    Doc# 18    Filed: 09/30/19    Entered: 09/30/19 16:05:14    Page 3 of 30

1

**TABLE OF AUTHORITIES**
(Continued)

Page

UCC § 9102(a)(64)(E). ..........................................................................................4

UCC § 9104(a)(2) ................................................................................................9

UCC § 9310(b)(8) ................................................................................................9

UCC § 9314 .........................................................................................................9

UCC § 9315 (a)(2) ..............................................................................................4

UCC § 9315(c)(2) ...............................................................................................4

UCC § 9315(d)(2) ...............................................................................................4

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

325263217.1

iii

MOTION FOR LEAVE TO APPEAL
INTERLOCUTORY ORDER

Defendant and Appellants Carmel Financing, LLC ("Appellant") hereby moves the Bankruptcy Appellate Panel ("BAP") for leave to appeal an interlocutory Order of United States Bankruptcy Court for the Northern District of California and represents and shows as follows:

## I.     STATEMENT OF FACTS

This appeal arises from a ruling by the United States Bankruptcy Court for the Northern District of California granting in part a motion to dismiss an adversary proceeding. It raises issues of first impression with regard to the interaction between California real estate law and the Uniform Commercial Code that have ramifications far beyond this appeal and the facts of this case. Appellant seeks leave to appeal an interlocutory order of the Bankruptcy Court to obtain guidance in this uncharted and important area of commercial law.

Appellant is a defendant in an Adversary Proceeding ("Adversary Proceeding"), now pending in the United States Bankruptcy Court for the Northern District of California. The Adversary Proceeding was filed by the Respondent, E. Lynn Schoenmann, as Chapter 7 trustee of the estate of Mayacamas Holdings, LLC ("Debtor"). The Debtor was the owner of a certain parcel of real property (the "Property") in Sonoma County, California. Appellant is the holder of a first priority Deed of Trust (the "Carmel Trust Deed") against the Property, securing payment of a Promissory Note (the "Note") in the principal amount of $2 million.

At the time of the execution of the Note and the Carmel Trust Deed, the Property was improved with a resort consisting of several structures. The Debtor's bankruptcy petition was filed on April 7, 2017. At the time of the filing, the improvements on the Property were intact. However, on October 8, 2017, all of the structures on the Property were destroyed in the Tubbs Fire. At the time of the fire, the Property was insured against fire by an insurance policy (the "Policy") issued by Philadelphia Indemnity Insurance Company. Philadelphia Indemnity paid certain sums to the Respondent under the Policy. As a result, Respondent is currently holding the sum of

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

325263217.1

1

MOTION FOR LEAVE TO APPEAL
INTERLOCUTORY ORDER

Case: 19-03012     Doc# 18     Filed: 09/30/19     Entered: 09/30/19 16:05:14     Page 5 of 30

1   $1,695,727.26 in proceeds of the Policy and intends to assert a claim against Philadelphia

2   Indemnity for additional amounts owing thereunder (collectively, the "Insurance

3   Proceeds").

4          Appellant asserted that its unquestionably perfected Trust Deed on the

5   Property entitles it to payment of the Insurance Proceeds as the proceeds of Appellant's

6   duly perfected real estate collateral. Appellant further contended that since its Trust Deed

7   was duly recorded as of the Petition Date, a subsequent change in the form of Appellant's

8   collateral cannot affect its perfected status. Respondent filed a Complaint ("Complaint")

9   in the Bankruptcy Court which commenced the within Adversary Proceeding. In the

10   Complaint, Respondent contended that Appellant's security interest in the Insurance

11   Proceeds was avoidable under Bankruptcy Code § 544. According to Respondent,

12   Appellant's security interest in those proceeds as personal property collateral was

13   unperfected on the Petition Date. Specifically, the Respondent claims that Appellant

14   failed to perfect its security interest in the Insurance Policy by failing to give notice of its

15   security interest to the insurance carrier, which the Respondent contends is required under

16   California law.

17          Appellant filed a motion to dismiss the Complaint in the Adversary

18   Proceeding. In that Motion, Appellant contended that (1) under familiar principles of the

19   so-called "Bankruptcy Freeze," Appellant is entitled to the insurance proceeds, since

20   Appellant's security interest in the real estate was undisputedly perfected on the Petition

21   Date, and the Insurance Proceeds, being the cash proceeds of the destroyed real property

22   collateral, was merely a post-petition change in form of the collateral. Under the

23   Bankruptcy Freeze, that change in form does not affect the perfected status of Appellant's

24   security interest; and (2) Appellant's security interest in the Insurance Proceeds was

25   perfected under the Uniform Commercial Code ("UCC") as identifiable cash proceeds of

26   its real estate collateral. Respondent opposed the Motion.

27          The hearing on the Motion to Dismiss went forward on June 3, 2019. At the

28   conclusion of the hearing, the Court took the matter under submission.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

325263217.1

2

MOTION FOR LEAVE TO APPEAL
INTERLOCUTORY ORDER

Case: 19-03012   Doc# 18   Filed: 09/30/19   Entered: 09/30/19 16:05:14   Page 6 of 30

On September 5, 2019, the Bankruptcy Court issued its Memorandum Decision on Motion to Dismiss Claims Against Defendant Carmel Financing, LLC ("Memorandum"). In the Memorandum, the Bankruptcy Court ruled that under the facts pleaded in the Complaint, Appellant's security interest was unperfected. The decision was based solely upon the provisions of the UCC. Although Appellant argued the Bankruptcy Freeze in both its moving papers and its Reply, the Memorandum did not address the Bankruptcy Freeze.

The Memorandum cited two cases, neither one of which was actually on point. This is not surprising, since neither Appellant nor Respondent was able to locate a case which actually decided this issue. The Memorandum directed counsel for Appellant to prepare and upload an order. Counsel did so, and on September 16, 2019, the Bankruptcy Court entered its Order on Motion to Dismiss Claims Against Defendant Carmel Financing, LLC ("Order"). A true and correct copy of that Order is attached hereto as exhibit A. Attached hereto as Exhibit B is a true and correct copy of the Memorandum.

(The Complaint and the Motion to Dismiss also dealt with a totally separate issue, relating to the enforceability of a default interest provision in the Note. That issue was decided in Appellant's favor, and is not the subject of this appeal or the instant Motion for Leave.)

## II.    QUESTIONS PRESENTED

1. Whether proceeds of fire insurance on real property encumbered by a trust deed are proceeds of the real estate collateral for the trust deed, thereby entitling the trust deed holder to those proceeds.

2. When real property encumbered by a deed of trust converts to insurance proceeds of destroyed collateral, do those proceeds "cross the line" from real property to personal property.

3. If the answer to Question 2 is in the affirmative, does the trust deed holder's perfected security interest in the real estate remain perfected under the UCC in

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

325263217.1

3

MOTION FOR LEAVE TO APPEAL
INTERLOCUTORY ORDER

Case: 19-03012    Doc# 18    Filed: 09/30/19    Entered: 09/30/19 16:05:14    Page 7 of 30

1 identifiable cash proceeds.

2         4.       What is the effect of the "Bankruptcy Freeze" on the answers to the

3 above questions.

4             **III.**    **WHY THIS APPEAL SHOULD BE HEARD**

5        This is a classic situation where there is a controlling question of law as to

6 which there is substantial ground for difference of opinion that would materially advance

7 the ultimate termination of the litigation. See, *In re Roderick Timber Co.*, 185 B.R. 601,

8 604 (9th Cir.BAP 1995); *In re Travers*, 202 B.R. 624, 626 (9th Cir. BAP 1996). The

9 issue presented on this appeal is the central issue in the Adversary Proceeding. As

10 discussed below, there surprisingly appears to be no case on point. Indeed, the cases cited

11 in the Memorandum, while tangentially related, do not actually address the issue

12 presented here.

13 **A.**    **The Perfection Issue**

14        The issue on this appeal is whether proceeds of fire insurance on perfected

15 real estate collateral constitute proceeds of that collateral, which retain the perfected status

16 of the underlying real estate lien regardless of whether Appellant also held a perfected

17 security interest in the Insurance Policy. Under the UCC, proceeds of insurance on

18 personal property collateral are unquestionably "proceeds" of that collateral. See, UCC

19 §9102(a)(64)(E).("proceeds" include "...***insurance payable by reason of the loss***, or

20 nonconformity of, defects or infringement of rights in, ***or damage to, the collateral***."

21 (Emphasis added).

22        Under UCC § 9315 (a)(2), a security interest attaches to identifiable

23 proceeds of the collateral. The security interest in those proceeds would be perfected if

24 the security interest in the underlying collateral was perfected (UCC § 9315(c)(2)), and

25 will remain perfected if, *inter alia,* the proceeds are "identifiable ***cash*** proceeds". UCC

26 §9315(d)(2). There is no dispute here that the Insurance Proceeds are identifiable cash

27 proceeds of real estate under the common understanding of that term. The main question

28 presented on this appeal is whether the same rule applies when the underlying collateral is

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

325263217.1

4

MOTION FOR LEAVE TO APPEAL
INTERLOCUTORY ORDER

Case: 19-03012    Doc# 18    Filed: 09/30/19    Entered: 09/30/19 16:05:14    Page 8 of 30

1 real property, rather than personal property. Even if, as held in the Memorandum, the
2 UCC's provisions on the treatment of proceeds deal only with the proceeds of personal
3 property collateral, that does not mean that the proceeds of real property are automatically
4 deemed unperfected because they are not within the scope of the UCC. The UCC
5 certainly does not provide that insurance proceeds of real estate collateral are *not*
6 identifiable cash proceeds. At best, real property collateral is beyond the scope of the
7 UCC, and we must look elsewhere for the answer.

8       The two cases cited in the Memorandum do not answer this question. The
9 Memorandum cites *In Re Ehrle*, 189 B.R. 771 (9th Cir. 1995) for the proposition that real
10 property is not "collateral" that is governed by the UCC. This, however, begs the
11 question. If real property is outside the scope of Article 9 of the UCC, then the perfection
12 rules of the UCC simply do not apply. The question remains as to what then does happen
13 when the collateral converts from real property to the cash proceeds. *Ehrle* does not
14 answer that question. *Ehrle* was a nondischargeability case that involved the issue of
15 whether the proceeds of the *sale* of real property constitute collateral of the holder of a
16 trust deed on the property. (Insurance proceeds were not involved.)[1]

17       California law apparently answers that question in the negative. That rule
18 makes some sense, since the sale of the collateral subject to a deed of trust does not
19 adversely affect the trust deed holder's collateral. The trust deed holder still has its lien
20 on the property as it did before the sale. Any sale of the real estate is a sale of the equity
21 over and above the trust deed, which is not part of the collateral. See, *Aitchison v. Bank of*
22 *America*, 8 Cal.2d 400, 403-4 (1937), relied upon by the court in *Ehrle*. That is a far cry
23 from fire insurance proceeds, which are in direct *substitution* for collateral that has been
24 destroyed and no longer exists.

25       The Memorandum also cite *Zaghi v. State Farm General Insurance*
26 *Company*, 77 F.Supp.3d 974 (N. D. Cal 2015). That case also did not decide this issue.

27

28 ─────────────────────
[1] In *Ehrle*, the trust deed at issue was unrecorded. 189 B.R. at 774

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES
325263217.1
5
MOTION FOR LEAVE TO APPEAL
INTERLOCUTORY ORDER

Case: 19-03012    Doc# 18    Filed: 09/30/19    Entered: 09/30/19 16:05:14    Page 9 of 30

1   *Zaghi* involved the question of whether the holder of a trust deed on real estate would

2   have a breach of contract claim or negligence claim against the ***insurance carrier*** that

3   refused to pay the insurance proceeds to the secured creditor. It did not involve any issue

4   between the secured creditor and a lien creditor or bankruptcy trustee, and the court had

5   no occasion to decide whether the trust deed holder had a perfected security interest in the

6   insurance proceeds. The issue was never presented. There is no issue on this appeal of

7   Appellant's standing to bring a breach of contract action against the insurer. The *Zaghi*

8   case is not instructive, and the question presented here remains unanswered.

9   **B.    The Bankruptcy Freeze**

10          Bankruptcy Code §544 by its express terms endows a trustee with certain

11   rights of a creditor that extends credit to the debtor, obtains a judicial lien, levies

12   execution, etc. "at the time of the commencement of the case." It is well established that a

13   trustee's avoiding powers are determined as of the Petition Date. Accordingly, the

14   respective rights of the parties are fixed and determined as of that date. On the Petition

15   Date, Appellant held (and still holds) a perfected security interest in the Property,

16   pursuant to the Carmel Trust Deed. That security interest is not subject to avoidance by

17   Respondent. Whatever may have happened after the Petition Date does not affect

18   Appellant's perfected status.

19          It is a familiar principle of bankruptcy law that the rights of a trustee in

20   bankruptcy to avoid a security interest are frozen as of the date of bankruptcy and are

21   unaffected by subsequent events. The so-called "bankruptcy freeze" has been widely

22   recognized, including in the Ninth Circuit. In *In re Wind Power Systems, Inc.*, 841 F.2d

23   288 (9th Cir. 1988), the court states:

24          "Section 544 preserves within the bankruptcy proceeding the equities

25          among creditors that existed outside bankruptcy. It freezes the relative

26          positions of secured and unsecured creditors at the time of the filing,

27          reducing the incentive to file a strategic bankruptcy petition, and awarding

28          the diligent creditor. [citation]" 841 F.2d at 292-3.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES   325263217.1                          6                    MOTION FOR LEAVE TO APPEAL
                                                                        INTERLOCUTORY ORDER

Case: 19-03012    Doc# 18    Filed: 09/30/19    Entered: 09/30/19 16:05:14    Page 10 of
30

Similarly, in In *re Raiton* 139 B.R. 931 (9th Cir. BAP 1992), the court held:

> "Under §544(a)(1), the trustee or debtor in possession stands in the shoes of a 'hypothetical lien creditor whose lien arose on the day the bankruptcy petition was filed.' [citing *Wind Power Systems, supra*]. As a lien creditor, the debtor-in-possession possesses the right and power to avoid any lien claims or security interests which are unperfected **on the date that the bankruptcy petition is filed**. Id." 139 B.R. at 934 (Emphasis added.)

So, for example, it has consistently been held that if a creditor holds a duly perfected security interest as of the date of the filing of the bankruptcy petition, that security interest does not become subject to avoidance as unperfected, even though the perfection may lapse sometime during the bankruptcy case. *Toranto v. Dzikowski*, 380 B.R. 96, 99-100 (U.S.D.C. , S.D. Florida 2007); *In re Colony Beach and Tennis Club, Inc*. 508 B.R. 468, 479-480 (Bkrtcy, M.D. Florida 2014); *In re Highland Construction Management Services,* 497 B.R. 829, 843 (Bkrtcy, E.D. Virginia 2013), *affirmed*, 583 Fed. App'x 217 (4th Cir. 2014) ("The debtor cannot avoid the secured creditor's security interest under §544(a) because as of the date of the filing of the petition, his lien was properly perfected. A §544(a) avoidance action looks to that point in time, not a later lapse." 497 B.R. at 843); *In re Miller Brothers Lumber Company*, 2013 U.S. Dist. Lexis 152176 *19, Note 7 (U.S.D.C., M.D. N.C. 2013); *In re Arithson*, 175 B.R. 313, 318 (Bkrtcy., D.N.D. 1994) ("Of significant import in this case is that a trustee's status as a judicial lien creditor and concomitant right to avoid unperfected security interests under §544(a) vests or becomes fixed at 'the commencement of the case'. 11 U.S.C. §544(a). Consequently, when ascertaining whether or not the Bank's security interests in the CRP payments and oil royalty payments were perfected in the instant case, *the operative date is the date the bankruptcy petition was filed* – February 21, 1992." 175 B.R. at 318 (Emphasis added.)); *In re Stetson Associates, Inc.* 330 B.R. 613, 623 (Bkrtcy., E.D. Tennessee 2005) ("The Plaintiff's rights and powers as Chapter 7 Trustee were established as of the date of filing, but defined under state law. *See* 11 U.S.C.A.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES
325263217.1
7
MOTION FOR LEAVE TO APPEAL
INTERLOCUTORY ORDER

Case: 19-03012    Doc# 18    Filed: 09/30/19    Entered: 09/30/19 16:05:14    Page 11 of 30

§544(a).)" 330 B.R. at 623.

In *In re Neuenschwander,* 73 B.R. 327 (Bkrtcy., S.D. Florida 1987), the Court was presented with the mirror image of our case. In *Neuenschwander,* a lien creditor was secured by certain personal property, which did not include intangible personal property. On the petition date, the debtor was entitled to a tax refund, which was intangible personal property and therefore not subject to the lien. Apparently, during the course of the case, the trustee collected on that refund, thereby transmuting the income tax refund into a form of personal property which would have been subject to the secured creditor's lien. Nonetheless, the court found that the secured creditor was not thereby entitled to the transmuted income tax refund, since under Bankruptcy Code §544(a), it did not have that right on the petition date.

Similarly, in our case the perfection of Appellant's lien in the collateral is to be determined as of the Petition Date, at which time the collateral was in the form of real estate, on which Appellant was indubitably perfected. The fact that the collateral was subsequently transmuted into a different form after the Petition Date does not affect Appellant's perfection. As a result, the Respondent's attempt to avoid Carmel's security interest in the proceeds of its collateral based upon post-petition events must fail.

As noted above, the Memorandum does not address this issue. This Court may determine in the first instance what effect the Bankruptcy Freeze may have on the perfection issues discussed above.

## C.    Significance of This Appeal.

The questions presented on this appeal will affect real estate collateral in numerous cases. Respondent argued in the Bankruptcy Court, and the Memorandum apparently adopts, the theory that the concept of identifiable cash proceeds is limited by the UCC to proceeds of personal property collateral and does not include proceeds of real property. The net result is that Appellant was deemed unperfected. That argument must of necessity assume that there is no such thing as proceeds of real property. Under that theory, once real estate is destroyed and is replaced by cash proceeds, the real estate is

somehow converted into personal property, which must be separately perfected under the UCC and cannot simply remain perfected as proceeds of previously perfected real estate collateral. Carried to its logical conclusion, this argument would lead to illogical results.

For example, if the holder of a deed of trust on real estate foreclosed that trust deed and sold the property to a third-party bidder for cash, those cash proceeds would be paid to the foreclosure trustee under the deed of trust. Under the Respondent's argument, if the borrower under the deed of trust should then file bankruptcy before the foreclosure trustee distributes that cash, it would be Respondent's position that the trust deed holder would now be unsecured: since its real estate collateral had been converted to personal property (cash proceeds), and since the trust deed holder would not have a perfected security interest under the UCC in the deposit account in which the foreclosure trustee held the proceeds (in the absence of the required three party control agreement necessary to perfect a security interest in a deposit account (See, UCC §§9104(a)(2), 9310 (b)(8), and 9314),which would virtually never occur), the trust deed holder would be rendered unsecured. This would be a shocking revelation to say the least, and would derail the entire system of real estate foreclosures.[2]

## **CONCLUSION**

For all of the foregoing reason, the Court should grant Appellant leave to appeal the interlocutory order.

---

[2] Under Respondent's theory, even if the foreclosure trustee did pay out the sale proceeds before the debtor's bankruptcy filing, if the debtor filed bankruptcy within 90 days thereafter, the bankruptcy trustee could still argue that the payment was a preferential transfer, since the payment would not have been made with the creditor's perfected collateral.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

325263217.1

9

MOTION FOR LEAVE TO APPEAL
INTERLOCUTORY ORDER

Case: 19-03012    Doc# 18    Filed: 09/30/19    Entered: 09/30/19 16:05:14    Page 13 of 30

Respectfully Submitted,

Dated:   September 30, 2019

MANATT, PHELPS & PHILLIPS, LLP

By: _____
          Carl L. Grumer

*Attorneys for Defendant*
CARMEL FINANCING, LLC

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

325263217.1

10

MOTION FOR LEAVE TO APPEAL
INTERLOCUTORY ORDER

Case: 19-03012    Doc# 18    Filed: 09/30/19    Entered: 09/30/19 16:05:14    Page 14 of
30

# Exhibit A

**Entered on Docket
September 16, 2019**
EDWARD J. EMMONS, CLERK
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA



Signed and Filed: September 15, 2019

**DENNIS MONTALI**
**U.S. Bankruptcy Judge**

# UNITED STATES BANKRUPTCY COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

|  |  |
|---|---|
| MAYACAMAS HOLDINGS LLC, | Case No. 17-30326 DM |
| Debtor. | Chapter 7 |
|  | ADVERSARY PROCEEDING NO. 19-03012 DM |
|  | **ORDER ON MOTION TO DISMISS CLAIMS AGAINST DEFENDANT CARMEL FINANCING, LLC** |
| E. LYNN SCHOENMANN, CHAPTER 7 TRUSTEE, |  |
| Plaintiff, |  |
| vs |  |
| CARMEL FINANCING, LLC, ET AL. |  |
| Defendants |  |

The motion ("Motion") of the Defendant Carmel Financing, LLC to dismiss the claims alleged against it in the within adversary proceeding came on regularly for hearing before the undersigned on June 3, 2019. Plaintiff appeared by her counsel, Thomas F. Koegel of Crowell & Moring LLP, and Defendant Carmel Financing LLC appeared by its counsel, Carl L. Grumer of Manatt, Phelps & Phillips, LLC. Upon conclusion of the hearing, the Court took the matter under submission.

Now, upon considering the papers filed with regard to the Motion and the argument of

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

325213066.1

ORDER ON MOTION TO DISMISS CLAIMS AGAINST
DEFENDANT CARMEL FINANCING, LLC

Case: 19-03012   Doc# 16   Filed: 09/15/19   Entered: 09/16/19 11:14:13   Page 1 of 2
Case: 19-03012   Doc# 18   Filed: 09/30/19   Entered: 09/30/19 16:05:14   Page 16 of
30

counsel, and the Court having made and entered its Memorandum Decision on Motion to Dismiss Claims Against Defendant Carmel Financing, LLC ("Memorandum") and good cause appearing,

It is hereby ordered as follows:

1. The Motion is granted in part and denied in part, for the reasons set forth in the Court's Memorandum Decision filed on September 5, 2019, at Docket Number 15.

2. The Court grants Carmel's Motion to Dismiss as to the Plaintiff's claims relating to the enforceability of the 18% default interest rate, the monthly late charges of 4%, and the $75,000 Exit Fee.

3. The court denies Carmel's Motion to Dismiss as to the Plaintiff's claims relating to the Insurance Proceeds, as defined in the Memorandum.

4. The next Adversary Proceeding Scheduling Conference will occur on October 25, 2019, at 1:30 PM.

*** END OF ORDER ***

APPROVED AS TO FORM:

/s/

Thomas F. Koegel
Counsel for Plaintiff

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

325213066.1

2

ORDER ON MOTION TO DISMISS CLAIMS AGAINST
DEFENDANT CARMEL FINANCING, LLC

Case: 19-03012    Doc# 16    Filed: 09/15/19    Entered: 09/16/19 11:14:13    Page 2 of 2
Case: 19-03012    Doc# 18    Filed: 09/30/19    Entered: 09/30/19 16:05:14    Page 17 of 30

# Exhibit B

Entered on Docket
**September 05, 2019**
EDWARD J. EMMONS, CLERK
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA



Signed and Filed: September 5, 2019

**DENNIS MONTALI**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | ) Bankruptcy Case No. 17-30326-DM |
| | ) |
| MAYACAMAS HOLDINGS LLC, | ) CHAPTER 7 |
| | ) |
| Debtor. | ) |
| | ) |
| _____ | ) |
| | ) |
| E. LYNN SCHOENMANN, Chapter 7 | ) Adversary Case No. 19-03012-DM |
| Trustee, | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| CARMEL FINANCING, LLC, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

MEMORANDUM DECISION ON MOTION TO DISMISS CLAIMS AGAINST
DEFENDANT CARMEL FINANCING LLC

On April 7, 2019, plaintiff E. Lynn Schoenmann, chapter 7
trustee ("Trustee") of the chapter 7 estate of Mayacamas
Holdings LLC ("Debtor"), filed a Complaint to Determine
Validity, Priority, and Extent of Liens; to Avoid Unperfected
Security Interests and Fraudulent and Preferential Transfers;

-1-

1  and to Object to Claims Relating to Sonoma County Assessor's
2  Parcel 120-190-033 (the "Complaint") against 23 named
3  defendants, including defendant Carmel Financing, LLC
4  ("Carmel"). *See* Complaint at dkt. 1. On April 22, 2019, Carmel
5  filed a motion to dismiss ("MTD") (dkt. 5) the adversary
6  proceeding for failure to state a claim upon which relief can be
7  granted. Trustee filed an opposition (dkt. 10), to which
8  Carmel replied (dkt. 12). Following a hearing on June 3, 2019,
9  the court took the MTD under advisement. For the reasons set
10 forth below, the court is denying the MTD in part and granting
11 it in part.

12

13 **I.    INTRODUCTION**

14       On April 10, 2014, Debtor executed a promissory note in
15 the principal amount of $2,000,000 to the order of Carmel (the
16 "Note"). The Note was secured by a first priority deed of trust
17 (the "DOT") encumbering property located in eastern Sonoma
18 County (the "Ranch Parcel"). On April 7, 2017, Debtor filed a
19 chapter 11 petition and listed the Ranch Parcel as its principal
20 asset. Trustee was appointed as the chapter 11 trustee on
21 October 4, 2017, and the case was converted to chapter 7 on
22 December 5, 2017.

23       On October 8, 2017 -- four days after the appointment of
24 Trustee -- the Tubbs Fire erupted and caused significant damage
25 to the Ranch Parcel. To date, Trustee has received more than $2
26 million from Debtor's insurance carrier for claims arising out
27 of the Tubbs Fire (the "Insurance Proceeds"). Carmel contends
28 that under the Note and DOT, the remaining Insurance Proceeds

-2-

should be turned over to it.  Trustee commenced this adversary proceeding seeking, among other things, an adjudication that Carmel has no secured interest in the insurance policy and the Insurance Proceeds.  Trustee additionally seeks a judicial determination that certain provisions of the Note are unenforceable, including those imposing an 18% default interest rate, monthly late charges of four percent, and a $75,000 "Exit Fee."

## II.  ISSUES AND CONTENTIONS

### A. Who is Entitled to the Insurance Proceeds?

Trustee alleges that Debtor was the only named insured on a "commercial lines policy" covering the Ranch Parcel (the "Policy").  As of April 7, 2019, Philadelphia Indemnity Insurance Company ("Insurer") had remitted to Trustee $2,114,268.76 in Insurance Proceeds for damages to the Ranch Parcel caused by Tubbs Fire.  *See* Complaint at dkt. 1, 3:11-20, ¶ 9.  Except for a court-approved expenditure of $418.541.50 for post-fire clean-up required by law, Trustee continues to hold the Insurance Proceeds, which equalled $1,695,727.26 as of the commencement of this adversary proceeding. *Id.*

In paragraph 11 of the Complaint, Trustee asserts that the chapter 7 estate, and not Carmel, is entitled to the Insurance Proceeds.  In support of this claim, Trustee alleges that the Policy does not mention Carmel or identify it as an additional loss payee.  She also alleges that Carmel did not notify Insurer that it should be added as a loss payee on the Policy in accordance with California's law (Cal. Comm. Code § 9312(b)(4))

-3-

1 governing the creation and perfection of security interests in
2 insurance policies; she further contends that Colorado law
3 excludes insurance policies from property in which a creditor
4 can claim a security interest. Carmel does not dispute either
5 allegation, but instead contends that it has a security interest
6 in the Insurance Proceeds, not the policy itself.

7 Exercising the strong-arm avoidance powers conferred upon
8 her by 11 U.S.C. § 544(a)(1), Trustee seeks to avoid any
9 security interest that Carmel may have had in the Insurance
10 Proceeds prior to and as of the petition date. "The avoided
11 lien may be preserved under 11 U.S.C. § 551 for the benefit of
12 the estate, thereby providing a possibility of payment to
13 estate's general unsecured creditors." *See* Complaint, ¶ 11, dkt.
14 1, p.3. *See also* id. at ¶¶ 23-26, 57, 60(a), and 62.

15     B. Are Carmel's Claims for Default Interest and Other
16        Charges Viable under Governing Law?

17 The Note provides for a 6% per annum interest rate.
18 Complaint, ¶ 21. In addition, an "Event of Default" provision
19 allows Carmel to recover an 18% "Default Rate;" monthly late
20 charges of 4%; and a $75,000 "Exit Fee." *Id.* Trustee contends
21 that California law governs the enforceability of these
22 provisions. She further alleges that the default interest and
23 interest charges do not bear a reasonable relationship to the
24 actual damages that the parties could have anticipated from a
25 breach of the Note and thus are unenforceable under California
26 law, particularly under California Civil Code section 1671 ("CC
27 § 1671"). *Id.* at ¶ 23.

28

-4-

1  In response, Carmel asserts that the loan documents
2  executed by Debtor explicitly provide that Colorado law governs
3  the matters pertaining to the Note's construction, validity and
4  performance, and that the amounts owed by Debtor as of the
5  petition date for default interest, late charges and the exit
6  fee are permissible under Colorado law.  MTD at dkt. 5, ECF pg.
7  15-17.  Carmel also contends even if California law does govern
8  the Trustee's claims, CC § 1671 is inapplicable when the loan
9  has matured and the entire Note is due and payable.

10

11 **III.  STANDARDS GOVERNING MOTIONS TO DISMISS**

12      To overcome a Rule 12(b)(6) motion to dismiss, a plaintiff
13  must plead "enough facts to state a claim to relief that is
14  plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S.
15  544, 570 (2007). "A claim has facial plausibility when the
16  plaintiff pleads factual content that allows the court to draw
17  the reasonable inference that the defendant is liable for the
18  misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678
19  (2009). "The plausibility standard is not akin to a probability
20  requirement, but it asks for more than a sheer possibility that
21  a defendant has acted unlawfully." *Id.* (internal quotation marks
22  omitted).  In considering a Rule 12(b)(6) motion, this court
23  must "accept factual allegations in the complaint as true and
24  construe the pleadings in the light most favorable to the
25  nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*,
26  519 F.3d 1025, 1031 (9th Cir. 2008).
27  //
28  //

-5-

**IV. DISCUSSION**

A. <u>Does California or Colorado Law Apply?</u>

*1. Governing Law*

Before addressing the merits of the substantive issues raised by the MTD, the court must determine which state law applies. Bankruptcy courts apply federal common law choice-of-law rules to determine the enforceability of a contractual choice-of-law provision, even when resolution of the underlying dispute turns on state law. *Mandalay Resort Group v. Miller*, 292 B.R. 409, 413 (9th Cir. BAP 2003); *In re CMR Mortg. Fund, LLC*, 416 B.R. 720, 728-29 (Bankr. N.D. Cal. 2009).

Federal common law applies section 187 of the Restatement (Second) Conflicts of Law to determine the enforceability of contractual choice-of-law provisions. *Id.* Subdivision (1) of the Restatement (Second) of Conflicts provides:

> The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.

In other words, parties to a contract "may agree to apply the law of a forum to decide all questions regarding the construction and performance of an agreement, but not questions regarding capacity to contract, or other contract-formation issues." *CMR*, 416 B.R. at 729. Where the making of a contract is not in dispute, "the law chosen by the parties need not have any reasonable relationship to the place of creation or performance of the contract." *Id.*

//

-6-

## 2. The Contractual Terms

Paragraph 10 of the Note provides that in "matters of construction, validity and performance, this note and the obligations arising hereunder shall be governed by, and construed in accordance with, the laws of the State of Colorado . . .[.] *See* Carmel's Request for Judicial Notice ("RJN") at dkt. 6 at ECF pgs. 7-8. In contrast, the DOT provides that "at all times the provisions for the creation, *perfection*, and enforcement of the lien and security interest created pursuant hereto and pursuant to any other document entered into between [Carmel and Debtor] shall be governed by and construed in which the property is located[.][1] RJN at dkt. 6, ECF pg. 18.

## 3. Analysis

Given the federal choice-of-law principles that place great weight on choice-of-law provisions executed by contracting parties with respect to the interpretation and enforcement of

_____

[1] The DOT also indicates that to the extent the law of the state where the property is located permits (i.e., California), the obligor (i.e., Debtor) waives any right to contest the applicability of Colorado law as to the "construction, validity, and enforceability" of the Note and DOT. Such a waiver would not be enforceable under California law, given that California courts will not enforce <u>express</u> choice of law provisions where the chosen state does not have a substantial relationship to the parties or their transaction or if the chosen state's law "is contrary to a fundamental policy of California" and "California has a materially greater interest than the chosen state in the determination of the particular issue. *Rincon EV Realty LLC v. CP III Rincon Towers, Inc.*, 8 Cal. App. 5th 1, 10 (2017) (internal citations omitted).

-7-

1  their contracts, and given California's interest in governing
2  security interests granted in real property and fixtures located
3  within its borders, this court will apply California law to
4  issues pertaining to the DOT, the Property, and the Insurance
5  Proceeds, which Carmel contends are proceeds of the Property.
6  Applying the same principles, the court will honor the
7  contracting parties' agreement to apply Colorado law when
8  interpreting, enforcing, or resolving a challenge to terms of
9  the Note.

10          B. Trustee Has Not Asserted a Cognizable Claim under
11             Colorado Law to Invalidate the Default Interest Rate and
12             Other Charges Imposed on Debtor

13      Trustee objects to the 18% default interest rate and the
14  other charges imposed by the Note and DOT, alleging that they
15  constitute impermissible and unenforceable penalties under
16  California law. *See* Complaint at dkt. 1, ¶ 60(a). Having
17  determined that Colorado law governs the enforceability of the
18  default interest rate and other charges and terms of the Note,
19  the court must decide whether these Note provisions run afoul of
20  that governing law. For the reasons set forth below, the court
21  concludes that default interest rate and other charges are
22  permissible under Colorado law.

23      Under Colorado law, miscellaneous charges such as default
24  charges and exit fees are permissible as long as the total
25  amount of the interest and fees and charges to be paid is less
26  than Colorado's usury rate of 45 percent. In *Dikeou v. Dikeou,*
27  928 P.2d 1286 (Co. Sup. Ct. 1996) (*en banc*), the Colorado
28  Supreme Court held that late payment charges provided in a non-

-8-

consumer loan agreement as a condition of credit being extended
constituted "interest" within the meaning of the non-consumer
usury statute as the numerical late charges were easily
convertible to a percentage of the unpaid balance of the loan.
*Id.* at 1293-94. In Colorado, usury occurs when the interest on
a loan exceeds 45%. *West's C.R.S.A.* § 5-12-103(2).

Carmel contends that the total amount being charged under
the Note (the 6% per annum interest rate, the 18% default rate,
the monthly late charges of 4% and the $75,000 exit fee) result
in an interest rate that is enforceable under Colorado's
governing law. Assuming the factual accuracy of that
representation, the court agrees that Trustee's efforts to
strike those charges would not succeed under Colorado law.
Consequently, the court will grant the MTD as to the First Claim
for Relief.

C. Carmel's Claim Is Not Secured by the Insurance Proceeds

Carmel alleges that its "status as a secured creditor on
the Property" means that it "holds a perfected security interest
in the Insurance Proceeds since it cannot be disputed that the
Insurance Proceeds are the identifiable cash proceeds of that
real estate collateral." MTD at 4:25-5:1. In support of its
position, Carmel notes that paragraph (f) of the DOT granted it
a security interest in both real and personal property pursuant
to the Uniform Commercial Code ("UCC"), including all
"[i]ntangibles in which a security interest may be created under
the UCC." MTD, dkt. 5 at 22-26. According to Carmel, that
security interest extended to all insurance policies, insurance
payments and unearned insurance premiums as well as claims,

-9-

demands, awards, settlements and other payments arising or resulting from or otherwise relating to any insurance (whether or not Carmel was named as a loss payee).

Carmel's argument overlooks several salient points. First, the UCC defines a "security interest" as "an interest *in personal property or fixtures* that secures payment or performance of an obligation." *See* Cal. Comm. Code § 1201(35) (emphasis added). Carmel has not provided any evidence that, prior to the petition date, it perfected a security interest in any personal property or fixtures of Debtor, either by filing a financing statement or taking possession of such property as required by the UCC. *See* Cal. Comm. Code § 9310(a) and (b)(6). *See also* Cal. Comm. Code § and 9315(c) (providing that a security interest in proceeds is perfected only if the security interest in the original collateral was perfected).

Second, the UCC does not govern the "creation or transfer of an interest in or lien on real property, including a lease or rents thereunder" with certain exceptions that are inapplicable here. Cal. Comm. Code § 9109(c)(11). In arguing that it is entitled to the Insurance Proceeds, Carmel notes that the multi-state UCC generally defines "proceeds" as "[w]hatever is acquired upon the sale, lease, license, exchange or other disposition of collateral." Carmel further observes that "proceeds" include "insurance payable by reason of the loss . . . or damage from the collateral," citing U.C.C. § 9102(a)(64). But real property is not "collateral" that is governed by the UCC, as indicated in Cal. Comm. Code § 9109(c)(11). *See also In re Ehrle*, 189 B.R. 771, 775 (9th Cir.

-10-

1  1995) ("Under California's Uniform Commercial Code, security
2  interests in personal property extend to the cash proceeds
3  thereof. However, [the UCC] excepts the 'transfer of an interest
4  in or lien on real estate[,]' from coverage under California's
5  Article 9.").

6       Third, Carmel did not provide written notification to
7  Insurer that it should be added as a loss payee to the policy,
8  even though California's version of the UCC allows a creditor to
9  acquire a security interest in an insurance policy procured by a
10 debtor for its own benefit if, and only if, written notification
11 is provided to the insurer.  Section 9312 of the California
12 Commercial Code governs the perfection of security interests in
13 insurance.  In particular, section 9312(b)(4) provides that a
14 "security interest in, or claim in or under, any policy of
15 insurance, including unearned premiums, may be perfected only by
16 giving written notice of the security interest or claim to the
17 insurer."  Cal. Comm. Code § 9312(a)(4) (emphasis added).
18 Absent that written notice, Carmel cannot assert a security
19 interest in the claim filed with and paid by Insurer.

20      Fourth, and finally, California law does not permit a
21 mortgagee who has not been named as an insured (or who has not
22 provided written notification of its security interest in the
23 policy) to recover insurance proceeds relating to claims of
24 damage to the mortgaged property.  *Zaghi v. State Farm Gen. Ins.*
25 *Co.*, 77 F.Supp.3d 974 (N.D. Cal. 2015).  As the *Zahgi* court
26 stated:

27          In California, recovery of proceeds under an
28          insurance contract is generally limited to the named

-11-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

insureds. *Bonaparte v. Allstate Ins. Co.*, 49 F.3d 486, 488 (9th Cir. 1994); *see also Russell v. Williams*, 58 Cal.2d 487, 24 Cal.Rptr. 859, 374 P.2d 827 (1962) (per curiam). This is because "insurance does not insure the property covered thereby, but is a personal contract indemnifying the insured against loss resulting from the destruction of or damage to his interest in that property." *Russell*, 58 Cal.2d at 490, 24 Cal.Rptr. 859, 374 P.2d 827.

*Id.* at 977.

**V.  CONCLUSION**

For the reasons stated above, the court will GRANT Carmel's MTD as to Trustee's claims relating to the enforceability of the 18% default interest rate, the monthly late charges of 4%, and the $75,000 "Exit Fee."  It will DENY Carmel's MTD as to Trustee's claims relating to the Insurance Proceeds.  Counsel for Carmel should prepare and upload an order granting the MTD in part and denying it in part, for "the reasons set forth in the court's memorandum decision filed on September –, 2019, at dkt. –."  The order should also reflect that the next A.P. scheduling conference will occur on October 25, 2019, at 1:30 p.m. Counsel for Carmel must comply with B.L.R. 9021-1(c) before uploading the order.

*** END OF MEMORANDUM DECISION ***